## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| KEVIN MOORE BEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| LT. CHARLES CARVER, et al., | ) |
| | ) |
| Defendants. | ) |

Case No. 4:23-CV-347 JAR

## MEMORANDUM AND ORDER

Self-represented Plaintiff Kevin Moore Bey brings this action under 42 U.S.C. § 1983 for alleged violations of his civil rights. The matter is now before the Court upon the motion of Plaintiff for leave to proceed *in forma pauperis*, or without prepayment of the required filing fees and costs. ECF No. 3. Having reviewed the motion and the financial information submitted in support, the Court will grant the motion and assess a filing fee of $350. *See* 28 U.S.C. § 1915(b)(1). As Plaintiff is now proceeding *in forma pauperis*, the Court must review his complaint under 28 U.S.C. § 1915. Based on such review, the Court will direct Plaintiff to file an amended complaint on the court-provided form in compliance with the instructions set out below. Furthermore, as there is no constitutional right to appointment of counsel in civil cases and it would be premature to grant appointment at this stage in the proceeding, the Court will deny Plaintiff's motion for counsel, subject to refiling at a later date. The Court warns Plaintiff that his failure to comply with this Order could result in dismissal of this action.

### Initial Partial Filing Fee

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action *in forma pauperis* is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her

prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. *Id.*

Plaintiff is a convicted and sentenced state prisoner currently incarcerated at Jefferson City Correctional Center. ECF No. 1 at 2. In support of his motion to proceed without prepaying fees and costs, Plaintiff submitted an inmate account statement showing an average monthly balance of $2,095. ECF No. 4. The Court will therefore assess an initial partial filing fee of $350,[1] which is twenty percent of Plaintiff's average monthly balance.

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court may dismiss a complaint filed *in forma pauperis* if the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. When reviewing a complaint filed by a self-represented person under 28 U.S.C. § 1915, the Court accepts the well-

---

[1] Twenty percent of Plaintiff's average monthly balance is actually $419 but when a plaintiff is granted *in forma pauperis* status, the $52 administrative fee portion of the filing fee is waived. *See* 28 U.S.C. § 1914(a) ("The clerk of each district court shall require the parties instituting any civil action, suit or proceeding in such court, whether by original process, removal, or otherwise, to pay a filing fee of $350"); 28 U.S.C. § 1914(b) ("The clerk shall collect from the parties such additional fees only as are prescribed by the Judicial Conference of the United States"); Par. 14 of the Judicial Conference Schedule of Fees, District Court Miscellaneous Fee Schedule (issued in accordance with 28 U.S.C. § 1914) (Effective December 1, 2020, the Judicial Conference added a $52.00 administrative fee to the statutory fee for filing a civil action in district court. The Judicial Conference expressly provided, however, that the additional $52.00 "fee does not apply to applications for a writ of habeas corpus or to persons granted *in forma pauperis* status under 28 U.S.C. § 1915.").

pleaded facts as true, *White v. Clark*, 750 F.2d 721, 722 (8th Cir. 1984), and it liberally construes the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits the claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even self-represented plaintiffs are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (refusing to supply additional facts or to construct a legal theory for the self-represented plaintiff).

To state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id.* at 679.

### The Complaint

Although Plaintiff is currently incarcerated in Jefferson City, the allegations of his 42 U.S.C. § 1983 complaint relate to a period when he was being held at Potosi Correctional Center ("PCC"), as a convicted and sentenced state prisoner. ECF No. 1 at 1-2. Plaintiff names fifteen (15) defendants who are employees of PCC: (1) Charles Carver (correctional lieutenant); (2) Alex Downy (sergeant); (3) Cheryl Boyer (correctional officer); (4) Jeremiah Kitchell (correctional

officer); (5) Unknown McDonald (sergeant); (6) Unknown Scaggs (sergeant); (7) Unknown Walters (sergeant); (8) Unknown Conway (correctional officer); (9) Unknown Pain (correctional officer); (10) Chad Lawson (case manager): (11) Unknown Lacey (nurse); (12) Jane Doe (nurse); (13) Paul Blair (warden); (14) Jody Glore (deputy warden); and (15) Jennifer Price (assistant warden). *Id.* at 1-3. All defendants are sued in their individual capacities except Blair, Glore, and Price, who are sued in both their individual and official capacities. *Id.* at 3.

Plaintiff's complaint lists three legal claims: "Misuse of Force," "Denial of Medical Care," and "Denial of Due Process." *Id.* at 5-8. Plaintiff filed grievances related to each of these three claims, which he attached as exhibits to his complaint.[2] ECF No. 1-1. Reading the exhibits in conjunction with Plaintiff's allegations, provides some clarification on the claims.

Plaintiff first claim regarding force is brought against the nine correctional officer defendants (Carver, Downy, Boyer, Kitchell, McDonald, Scaggs, Walters, Conway, and Pain). ECF No. 1 at 5-6. Plaintiff alleges that on January 12, 2022, officer Boyer asked him to return to his cell and he did. A few minutes later, officers McDonald and Kitchell asked him to submit to restraints. Plaintiff replied to McDonald: "I can't believe that you are going to lock me up for such a minor offense." *Id.* at 5. Officers Carver and Downy approached and Plaintiff requested of Carver that he not be locked up, stating that he was not a "threat to the safety and security of the institution" and because he "had already complied with the order to lock[] down." *Id.* Plaintiff asserts that Carver then stated, "You ain't going to cuff up;" rushed into his cell; knocked him to the floor; punched him in the head and face; and banged his head against the floor. Plaintiff was

---

[2] In assessing whether a complaint sufficiently states a valid claim for relief, courts may consider materials that are attached to the complaint as exhibits. *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011) (citations omitted); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

then cuffed by Carver and escorted to the medical unit. During the escort, Carver threatened to kill Plaintiff.

Subsequently, Plaintiff was taken to a suicide cell in one of the housing units. Once in the cell, Downy removed his cuffs and ordered him to strip out of his clothing. *Id.* Carver then questioned him about the location of a weapon. Plaintiff denied having a weapon and he asserts that Carver and Downy then forced him to the floor, punched his head and face, and banged his head on the floor. *Id.* at 6. Correctional officers Scaggs, Walters, Pain, and Conway rushed into the cell and Plaintiff felt "someone stomping on [his] back." Carver bit Plaintiff's thumb and then ordered the four officers to leave. Carver and Downy "started breaking" Plaintiff's arm and fingers on both hands. Plaintiff called for help. They left Plaintiff in the cell. Plaintiff states that he was bleeding from his eye, nose, mouth, and left shoulder; both his hands were swollen; and his rib cage hurt. Plaintiff alleges that the defendants did nothing to protect him from this excessive use of force. *Id.*

Plaintiff filed an Informal Resolution Request ("IRR") regarding these incidents of force. ECF No. 1-1 at 1-5. In the IRR, Plaintiff additionally stated that the force applied by Carver and Downy in the suicide cell occurred "after [Plaintiff] couldn't comply fast enough" to Downy's order to strip. *Id.* at 3. Defendant Jody Glore responded to Plaintiff's grievance, describing the initial incident as a "spontaneous use of force resulting from [Plaintiff's] refusal to submit to wrist restraints and combative behavior" and the later incident in the suicide cell as an assault by Plaintiff on staff "conducting the [strip] search resulting in a further use of force." *Id.* at 8.

Plaintiff's second claim is denial of medical care against two PCC nurses – Lacey and an unknown Jane Doe nurse. ECF No. 1 at 7. Plaintiff alleges that after he was assaulted in the suicide cell, the two nurse defendants "approached the cell." He informed them that he had been

assaulted, that he couldn't stop the bleeding, and that he may have a broken jaw, arm, and fingers. Plaintiff alleges that the nurses "turned and walked away." Plaintiff states that he was bleeding and in pain all night. He complained to the medical tech the following morning and was taken to medical. *Id.* Once there, he states that he was treated for head trauma and placed in the "TCU" for x-rays. *Id.* at 7, 9.

In the grievance documents regarding denial of medical care, Glore states that between the two uses for force Plaintiff was "taken to medical for an evaluation" and after the second use of force, Plaintiff was "seen by medical in the housing unit." ECF No. 1-1 at 8. The institutional response to his IRR on the subject, summarized his care, in part, as follows:

> Nurse Wilkins responded to a Use of Force on January 12th, 2022. She reports an injury to your right eye (swollen), left hand, and right hand. She reports, "1 cm laceration to right eye above the eyebrow. Bleeding easily controlled and abx ointment placed over laceration. Left eye puffy. Nose bloody right nare slight bleeding easily controlled. … Right and left hand swollen left greater than right."

*Id.* at 13. The grievance appeal response further explains that when Plaintiff was evaluated by medical after the incident, the nurse "was not allowed to enter the cell for security reasons so assessed through the window." *Id.* at 16. When Plaintiff was taken to medical on the day following the incident, Plaintiff had his face cleaned of dried blood; had two steri-strips applied to his right eyebrow; was ordered x-rays of his face and chest; and was placed in the TCU overnight for monitoring. The next day he received a Tetanus vaccine and had his facial x-ray. Subsequently, he received Tylenol for pain. *Id.* at 13. Plaintiff's x-ray results showed no fracture of the facial bones. *Id.* at 16.

Plaintiff's third claim is that he was denied due process in his hearing on the two conduct violations that he received as a result of the incidents described above. ECF No. 1 at 8. On January 20, 2022, case manager Lawson came to Plaintiff's cell to hold a disciplinary hearing on the

conduct violations. Plaintiff complains that he never received copies of the conduct violations, that he was denied witnesses, and that he had never been interviewed on the incidents. Plaintiff states that Lawson continued the hearing and found him guilty. As a result, Plaintiff alleges he was denied his due process rights. *Id.*

Plaintiff's grievance concerning the denial of due process at this hearing was approved by defendant Glore on May 28, 2022, after a review of all the pertinent information. ECF No. 1-1 at 22. Glore directed that Plaintiff's conduct violations be "re-heard" in order to "preserve [his] due process." *Id.*

For relief on these three claims, Plaintiff seeks damages and a declaration that his rights have been violated. ECF No. 1 at 10.

## Discussion

Based on a careful review and liberal construction of the filings before the Court, Plaintiff has not adequately alleged claims to withstand review under 28 U.S.C. § 1915(e)(2). Because Plaintiff is self-represented and he has presented serious allegations to the Court, he will be allowed to amend his complaint in accordance with the instructions set forth below. *See Munz v. Parr*, 758 F.2d 1254 (8th Cir. 1985) (discussing how a court should give a *pro se* plaintiff a statement of the complaint's deficiencies and a chance to amend the complaint before dismissing for failure to state a claim). Plaintiff should consider the following legal issues in filing his amended complaint.

## I.      Legal Standards: Eighth Amendment

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which was designed to provide a "broad remedy for violations of federally protected civil rights." *Monell v. Dep't of Soc. Servs*, 436 U.S. 658, 685 (1978). One such federally protected right is the Eighth Amendment's prohibition on cruel and unusual punishment which limits the conditions in which a State may

confine convicted criminals. *Robinson v. California*, 370 U.S. 660 (1962); *Rhodes v. Chapman*, 452 U.S. 337 (1981). The Supreme Court has explained this limit as a prohibition on punishments that "involve the unnecessary and wanton infliction of pain" including those that are "totally without penological justification." *Rhodes*, 452 U.S. at 346 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173, 183 (1976)); *see also Whitley v. Albers*, 475 U.S. 312, 319 (1986).

"[Correctional] Officers may reasonably use force in a good-faith effort to maintain or restore discipline but may not apply force maliciously and sadistically to cause harm." *Johnson v. Blaukat*, 453 F.3d 1108, 1112 (8th Cir. 2006) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)) (internal quotation marks omitted). "Because the use of force is sometimes required in prison settings, guards are liable only if they are completely unjustified in using force, i.e., they are using it maliciously and sadistically." *Irving v. Dormire*, 519 F.3d 441, 446 (8th Cir. 2008) (citing *Hudson*, 503 U.S. at 9). The test for reasonableness or the good-faith application of force depends on the following:

> whether there was an objective need for force, the relationship between any such need and the amount of force used, the threat reasonably perceived by the correctional officers, any efforts by the officers to temper the severity of their forceful response, and the extent of the inmate's injury.

*Treats v. Morgan*, 308 F.3d 868, 872 (8th Cir. 2002) (citing *Hudson*, 503 U.S. at 7). *See also Hickey v. Reeder*, 12 F.3d 754, 759 (8th Cir. 1993) ("There is no question that prison officials may compel compliance with legitimate prison regulations.); *Stenzel v. Ellis*, 916 F.2d 423, 426 (8th Cir. 1990) (holding that inmate's refusal to comply with a legitimate jail security regulation constitutes a disturbance that poses a security risk to the safety of inmates and prison staff).

A prisoner may also assert an excessive-use-of-force claim against a correctional officer who knew or had reason to know another officer was using excessive force, and who had the

- 8 -

opportunity to intervene to prevent the excessive use of force by his fellow correctional officer but failed to do so. *Livers v. Schenck*, 700 F.3d 340, 360 (8th Cir. 2012); *Putman v. Gerloff*, 639 F.2d 415, 423 (8th Cir. 1981). The question is whether the officer's inaction amounts to deliberate indifference to the inmate's health and safety. *Buckner v. Hollins*, 983 F.2d 119, 122 (8th Cir. 1993).

The Eighth Amendment's prohibition on cruel and unusual punishment also protects prisoners from deliberate indifference to serious medical needs. *Luckert v. Dodge Cnty.*, 684 F.3d 808, 817 (8th Cir. 2012). To prevail on a deliberate indifference claim, a prisoner plaintiff must demonstrate that he suffered from an objectively serious medical need, and that defendants actually knew of and disregarded that need. *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019); *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). A "serious medical need" is "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011) (quoted case omitted).

"[D]eliberate indifference requires a highly culpable state of mind approaching actual intent." *Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017) (quoted case omitted). An inmate must demonstrate that a prison health care provider's actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Jackson v. Buckman*, 756 F.3d 1060, 1066 (8th Cir. 2014) (quoted case omitted). Allegations of mere negligence in giving or failing to supply medical treatment will not suffice. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Nor will a prisoner's "mere disagreement with treatment decisions" support a claim of deliberate indifference. *Jones v. Minn. Dep't of Corr.*, 512 F.3d 478, 482 (8th Cir. 2008).

Deliberate indifference may also be demonstrated by prison officials who intentionally deny or delay access to medical care. *Estelle*, 429 U.S. at 104-05. When a delay in treatment is alleged to have violated an inmate's constitutional rights, a court measures the objective severity of the deprivation "by reference to the *effect* of the delay in treatment." *Jackson v. Riebold*, 815 F.3d 1114, 1119 (8th Cir. 2016) (internal quotation marks omitted) (quoting *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005)). To support a claim based on a delay in treatment, a plaintiff must present "verifying medical evidence" showing that the delay in treatment had detrimental effects. *Id.* at 1119-20; *see also Holden*, 663 F.3d at 342 ("[a] prisoner alleging a delay in treatment must present verifying medical evidence that . . . [the] delays adversely affected his prognosis.").

## II.    Excessive Force

### a.   Officers Carver and Downy

Taking the pleadings as a whole, in the first use of force, it appears that Plaintiff was directed to submit to restraints by correctional officers McDonald and Kitchell. Plaintiff responded with verbal complaints. When officers Carver and Downy approached, Plaintiff also complained to Carver and argued that he did not pose a security threat. After these complaints, Carver used force to put Plaintiff in cuffs.

As stated above, correctional officers may use force to maintain discipline or to compel compliance with a legitimate prison regulation. *Johnson*, 453 F.3d at 1112; *Hickey*, 12 F.3d at 759. An inmate's refusal to follow an order could constitute a disturbance that poses a security risk. *Stenzel*, 916 F.2d at 426. In order for a use of force to be excessive, a plaintiff must allege facts establishing that the force was completely unjustified. *Irving*, 519 F.3d at 446.

In this case, Plaintiff's verbal complaints could constitute failure to follow an order which required an objective need for force. Plaintiff does not state whether or not he physically resisted

the application of restraints, but Glore describes his behavior as a "refusal to submit to wrist restraints and combative behavior." Plaintiff seems to admit that he verbally complained and argued, but he does not address whether he physically resisted. In a situation involving combative behavior, the amount of force required would be enhanced. Furthermore, Plaintiff was seen in the medical unit after this first use of force and the extent of his injuries appear to be lacerations, bruising, and swelling. As such, Plaintiff does not appear to have incurred extensive injuries. Overall, it is not clear from the pleadings whether Carver's use of force was unjustified because it is not clear whether Plaintiff failed to comply with an order or if his behavior was combative.

In the second use of force in the suicide cell, Downy ordered Plaintiff to remove his clothing and after Plaintiff did not comply fast enough, Downy and Carver used force again. Glore described this incident as a response by staff to an assault by Plaintiff when he was being strip-searched. Plaintiff does not address whether or not he resisted the search, or if he assaulted Carver and Downy during it. If placement in a suicide cell requires an initial search, and Plaintiff refused to comply with this legitimate prison regulation, his actions would justify a use of force by the correctional officers. In addition, Carver's order directing the four additional officers (Scaggs, Walters, Pain, and Conway) to leave the cell, could constitute an attempt to temper the severity of the forceful response. Finally, as to the extent of Plaintiff's injuries, the x-ray showed no fracture to his facial bones. Based on the facts alleged concerning his second use of force, again, Plaintiff does not plead enough to state a claim that the force used was sadistic and malicious. Plaintiff must provide additional factual allegations in his amended complaint in order to state a claim of excessive force against these defendants.[3]

---

[3] To the extent that Plaintiff also alleged that officer Carver threatened to kill him, "[g]enerally, mere verbal threats made by a state-actor do not constitute a § 1983 claim." *Hopson v. Fredericksen*, 961 F.2d 1374, 1378 (8th Cir. 1992).

**b. Officers Scaggs, Walters, Pain, and Conway**

Plaintiff alleges that these four officers entered the suicide cell while he was being assaulted by Carver and Downy. Plaintiff felt pressure on his back and then Carver ordered these officers to leave. The possible act of one of these officers "stomping" on Plaintiff's back is not enough to state an excessive force claim. As such, it appears that Plaintiff is alleging that these four officers failed to intervene when Carver and Downy allegedly applied excessive force.

As stated above, if these officers' actions amount to deliberate indifference to Plaintiff's health and safety, then Plaintiff has alleged an excessive-use-of-force claim based on their knowledge of the force being used on Plaintiff and their opportunity to intervene to prevent it. *Livers*, 700 F.3d at 360; *Putman*, 639 F.2d at 423; *Buckner*, 983 F.2d at 122. However, unless and until Plaintiff's complaint adequately alleges an excessive force claim against Carver and Downy, he cannot proceed on a failure to intervene claim against officers Scaggs, Walters, Pain, and Conway.

**III.    Deliberately Indifferent Medical Care**

Plaintiff was seen in medical after the first use of force and due to security concerns, he was physically assessed through the suicide cell window by nurses after the second use of force. As such, the allegations do not support a claim of a refusal to provide medical care. Instead, Plaintiff seems to be alleging a delay in the receipt of adequate medical care, since he received more extensive care on the following day in the medical unit.

In order to state a claim of delay in medical treatment as a constitutional violation, Plaintiff must present medical evidence indicating that the delay had a detrimental effect on his medical prognosis. *Jackson*, 815 F.3d at 1119-20*; Holden*, 663 F.3d at 342. In this case, the facial x-rays that Plaintiff received later, found no fracture. Furthermore Plaintiff alleges no serious medical

problem that went untreated causing a negative side-effect. The allegations of Plaintiff's complaint fail to state a claim of deliberate indifference as to nurses Lacey and Jane Doe.

## IV.    Due Process Rights

The Prison Litigation Reform Act (PLRA) requires exhaustion of administrative remedies for all suits about prison life before such claims are brought to federal court. *See* 42 U.S.C. § 1997e(a). The purpose of this exhaustion requirement is to afford "corrections officials time and opportunity to address complaints internally" and for the possibility that "corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation." *Porter v. Nussle*, 534 U.S. 516, 525 (2002) (citing *Booth v. Churner*, 532 U.S. 731, 737 (2001)).

In this case, Plaintiff's grievance on his denial-of-due-process claim was granted by defendant Glore on May 28, 2022, and his conduct violations were directed to be re-heard. *See* ECF No. 1-1 at 22. Plaintiff's makes no allegations concerning a denial of due process in the re-hearing of his violations. Plaintiff's claim here is mooted by the relief he received through the grievance process. As such, Plaintiff's claim fails to state a § 1983 claim upon which relief may be granted. Plaintiff has asserted no claim against defendant case manager Chad Lawson that survives initial review.

## V.     Personal Liability Required for § 1983 Claim

Plaintiff names PCC warden Paul Blair and assistant PCC warden Jennifer Price as defendants in the caption and defendant list, but he does not allege that they did anything to violate his rights. Plaintiff alleges no harm by these defendants and therefore, fails to state a claim against them. *See Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974) ("Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant

except for his name appearing in the caption, the complaint is properly dismissed, even under the liberal construction to be given pro se complaints"); *see also Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir. 2003) (affirming dismissal of *pro se* complaint against defendants who were merely listed as defendants in the complaint and there were no allegations of constitutional harm against them).

Similarly, as to correctional officers Boyer, McDonald, and Kitchell and deputy warden Glore, Plaintiff fails to make factual allegations against these defendants that would state a § 1983 claim for relief. As to Boyer, Plaintiff only alleges that she asked him to return to his cell and he did. As to McDonald and Kitchell, Plaintiff only alleges that they directed him to submit to restraints. As to Glore, Plaintiff makes no mention her in his allegations but she did sign some of his grievance documents. (Although for one claim, as stated above, Glore approved Plaintiff's grievance request.) This is not enough to state a claim for relief. *See George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) ("Only persons who cause or participate in the [constitutional] violations are responsible. ... Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation.").

Plaintiff does not allege that these defendants did anything to violate his rights or cause him constitutional harm. Plaintiff's complaint fails to state a § 1983 claim against defendants Blair, Price, Boyer, McDonald, Kitchell, or Glore.

### Instructions for Amendment

Plaintiff should file an amended complaint on the court-provided form in an attempt to cure these pleading deficiencies. Plaintiff is advised that the filing of an amended complaint **completely replaces** the original complaint and all supplements, and so it must include all claims Plaintiff wishes to bring. *See In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922,

928 (8th Cir. 2005) ("It is well-established that an amended complaint supercedes an original complaint and renders the original complaint without legal effect"). Any claims from the original complaint or any supplements that are not included in the amended complaint will be deemed abandoned and will not be considered. *Id.* Plaintiff must **type or neatly print** the amended complaint on the Court-provided prisoner civil rights complaint form, and the amended complaint must comply with the Federal Rules of Civil Procedure. *See* E.D. Mo. L.R. 2.06(A).

The Federal Rules of Civil Procedure require litigants to formulate their pleadings in an organized and comprehensible manner. Even self-represented litigants are obligated to abide by the Federal Rules of Civil Procedure and to plead specific facts as to each named defendant. *See U.S. v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994). Plaintiff is required to set out his alleged claims in a simple, concise, and direct manner, and also the facts supporting his claims as to each named defendant. *See* Fed. R. Civ. P. 8(a)(2) (complaint should contain short and plain statement of claims); 8(d)(1) (each claim shall be simple, concise, and direct); 10(b) (parties are to separate their claims within their pleadings and the contents of which shall be limited as far as practicable to a single set of circumstances). Plaintiff should fill out the complaint form in its entirety.

In the "Caption" section of the complaint form, Plaintiff must state the first and last name, to the extent he knows it, of the defendant or defendants he wants to sue. *See* Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties"). If there is not enough room in the caption, Plaintiff may add additional sheets of paper. However, all the defendants must be clearly listed. Plaintiff should also indicate whether he intends to sue each defendant in his or her individual capacity, official capacity, or both. Plaintiff should avoid naming anyone as a defendant unless that person is directly related to his claim(s).

In the "Statement of Claim" section, Plaintiff should begin by writing a defendant's name. In separate, numbered paragraphs under that name, Plaintiff should write the specific facts supporting his claim or claims against that defendant. If Plaintiff is suing more than one defendant, he should proceed in the same manner with each one, separately writing each individual defendant's name and, under that name, in numbered paragraphs, the factual allegations supporting his claim or claims against that defendant. Plaintiff should only include claims that arise out of the same transaction or occurrence, or simply put, claims that are related to each other. *See* Fed. R. Civ. P. 20(a)(2). Alternatively, Plaintiff may choose a single defendant, and set forth as many claims as he has against him or her. *See* Fed. R. Civ. P. 18(a). Plaintiff's failure to make specific factual allegations against any defendant will result in that defendant's dismissal. Furthermore, the Court emphasizes that the "Statement of Claim" requires more than "labels and conclusions or a formulaic recitation of the elements of a cause of action." *See Neubauer v. FedEx Corp.*, 849 F.3d 400, 404 (8th Cir. 2017).

If Plaintiff is suing a defendant in an individual capacity, he is required to allege facts demonstrating the personal responsibility of the defendant for harming him. *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) (stating that § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights"). It is not enough for Plaintiff to refer to a group of defendants and make general allegations against them. Instead, Plaintiff must explain the role of each defendant so that each defendant will have notice of what he or she is accused of doing or failing to do. *See Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (stating that the essential function of a complaint "is to give the opposing party fair notice of the nature and basis or grounds for a claim.").

If Plaintiff fails to file an amended complaint on the court-provided form within thirty (30) days in accordance with the instructions set forth herein, the Court may dismiss this action without prejudice and without further notice to Plaintiff.

### Appointment of Counsel

Finally, Plaintiff has filed a motion for appointment of counsel. ECF No. 2. The appointment of counsel for an indigent plaintiff in a civil matter lies within the discretion of the Court. *Phillips v. Jasper Cnty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006). There is no constitutional or statutory right to appointed counsel in civil cases. *Nelson v. Redfield Lithograph Printing*, 728 F.2d 1003, 1004 (8th Cir. 1984). Once the plaintiff has alleged a *prima facie* claim, the Court must determine the plaintiff's need for counsel to effectively litigate his claim. *In re Lane*, 801 F.2d 1040, 1043 (8th Cir. 1986). The standard for appointment of counsel in a civil case is whether both the plaintiff and the Court would benefit from the assistance of counsel. *Edgington v. Mo. Dep't of Corr.*, 52 F.3d 777, 780 (8th Cir. 1995), *abrogated on other grounds by Doe v. Cassel*, 403 F.3d 986, 989 (8th Cir. 2005). This determination involves the consideration of several relevant criteria, including "the factual complexity of the issues, the ability of the indigent person to investigate the facts, the existence of conflicting testimony, the ability of the indigent person to present the claims, and the complexity of the legal arguments." *Phillips*, 437 F.3d at 794 (citing *Edgington*, 52 F.3d at 780).

In this matter, the Court finds that appointment of counsel is not warranted at this time. The action appears to involve straightforward questions of fact rather than complex questions of law. Further, the request for counsel is premature, as defendants have not yet been served, and the Court has not issued any Case Management Order. The Court concludes that the appointment of

counsel would not be of sufficient benefit to the Court or to Plaintiff at this time, and will deny Plaintiff's motion for appointment of counsel, without prejudice.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion for leave to proceed *in forma pauperis* [ECF No. 3] is **GRANTED.** *See* 28 U.S.C. § 1915(a)(1).

**IT IS FURTHER ORDERED** that the Plaintiff shall pay an initial filing fee of $350 within **thirty (30) days** of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that the Clerk of Court shall mail to Plaintiff a blank copy of the Court's Prisoner Civil Rights Complaint form.

**IT IS FURTHER ORDERED** that, within **thirty (30) days** of the date of this Order, Plaintiff shall file an amended complaint on the Court-provided form and in compliance with the Court's instructions.

**IT IS FURTHER ORDERED** that upon submission of the amended complaint, the Court shall again review this action pursuant to 28 U.S.C. §1915.

**IT IS FURTHER ORDERED** that Plaintiff's motion for appointment of counsel [ECF No. 2] is **DENIED without prejudice**.

**Plaintiff's failure to timely comply with this Order could result in the dismissal of this action, without prejudice and without further notice.**

Dated this **23rd** day of May, 2023.

*John A. Ross*

JOHN A. ROSS
UNITED STATES DISTRICT JUDGE

- 18 -